Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PIM SHIH,<br><br>                  Plaintiff,<br><br>v.<br><br>UNION COUNTIES ECONOMIC DEVELOPMENT CORPORATION,<br><br>                  Defendant. | Civil Action No.: 23-22036 (ES) (SDA)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court is defendant Union Counties Economic Development Corporation's ("UCEDC" or "Defendant")[1] motion to dismiss *pro se* Plaintiff Pim Shih's ("Shih" or "Plaintiff") amended complaint (D.E. No. 6 ("Amended Complaint" or "Am. Compl.")). (D.E. No. 19). Having considered the parties' submissions, and deciding this matter without oral argument (*see* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b)), for the reasons set forth below, the Court **GRANTS** Defendant's motion to dismiss the Amended Complaint.

I.   **BACKGROUND**

On November 6, 2023, Plaintiff filed this action along with an application to proceed *in forma pauperis* ("IFP"). (*See* D.E. No. 1 ("Original Complaint" or "Compl.") & D.E. No. 1-3). On January 16, 2024, this Court granted Plaintiff's IFP application and dismissed the Original Complaint *without prejudice* for failure to state a claim upon which relief may be granted. (D.E.

---

[1]   Defendant contends its correct name is "Union **County** Economic Development Corporation." (D.E. No. 19-1 ("Mov. Br.") at 1 (emphasis added)).

No. 5 ("January 16, 2024 Letter Order") at 5). On January 22, 2024, Plaintiff filed an Amended Complaint in accordance with the Court's January 16, 2024 Letter Order. (D.E. No. 6). The Court summarizes the facts as alleged in the Amended Complaint.

Plaintiff is a New Jersey resident who asserts that Defendant, a New Jersey lending institution, discriminated against him based on race (as an Asian American) and religion (as a Christian) when he applied for a business loan. (*See generally* Am. Compl.). Specifically, Plaintiff asserts that on August 23, 2023, he submitted a comprehensive loan application to Defendant through its website, which included the submission of financial documents. (*Id*. ¶ 6). Plaintiff states that as part of the application he also submitted his own website, which "openly states the Plaintiff's belief in Jesus Christ the Lord." (*Id*. ¶ 7). After submitting the loan application, Plaintiff received correspondence dated August 25, 2023, from Defendant's loan officer requesting additional financial documentation. (*Id*. ¶ 8). Plaintiff asserts that the officer "expressed doubts about the loan amount applied for, citing the 2022 financials." (*Id*.). On August 29, 2023, Plaintiff spoke on the phone with Defendant's representatives, and subsequently communicated with them by email. (*Id*. ¶ 9). Plaintiff asserts Defendant requested a "detailed listing of all revenue sources," including a "clean [Profit and Loss statement] for the 2023 year to date," noting that Plaintiff needed "to have good books and records for lending purposes." (*Id*.). Though Plaintiff never states so explicitly, it appears Defendant denied Plaintiff's loan application. (*See id*. ¶ 19(c) ("As a result of the Defendants' discriminatory actions and negligence, the Plaintiff was unjustly denied access to financial opportunities that would have supported the growth and success of their business. This denial caused significant financial harm and hindered the Plaintiff's entrepreneurial pursuits."); *see also id.* ¶ 12 (noting that Plaintiff "was able to secure business loans from various [other] big banks")).

Plaintiff asserts that Defendant discriminated against him based on his status as "an Asian American and a Christian." (*Id.* ¶ 10). Specifically, according to Plaintiff, "UCEDC's requirement for a detailed listing of revenue sources and the emphasis on 'good books and records for lending purposes' were pretextual and constituted discrimination." (*Id.*).

Plaintiff alleges Defendant is a state actor "due to its deep entanglement with the State of New Jersey." (*Id.* ¶ 11). As in the Original Complaint, Plaintiff maintains Defendant receives significant funding from the State of New Jersey, such that the alleged "financial dependence and regulatory control blur the line between public and private entities, effectively making [Defendant] an arm of the state." (*Id.* at 4 ¶ I.1[2]). Moreover, Plaintiff asserts Defendant "performs functions traditionally reserved for the government, playing a central role in state economic development initiatives." (*Id.* at 4 ¶ II). Finally, Plaintiff alleges the state delegated power to Defendant such that it has quasi-governmental authority in its management of critical programs and resources related to business loans and economic development. (*Id.* at 4 ¶ III).

Based on these facts, Plaintiff asserts the same five causes of action in the Amended Complaint as alleged in the Original Complaint: (i) discrimination "in violation of the Equal Credit Opportunity Act" (Counts I & V);[3] (ii) intentional infliction of emotional distress (Count II); (iii) negligence (Count III); and (iv) "violation of the First Amendment rights" (Count IV).[4] (*Id.* at 5–

---

[2]  Plaintiff's Amended Complaint does not always include consecutively numbered paragraphs; thus, the Court cites to both page and paragraph numbers where necessary. In addition, all pin citations to Plaintiff's opposition brief (D.E. No. 22) and sur-reply (D.E. No. 26) are to the page numbers automatically generated by the Court's CM/ECF case management system.

[3]  In the Amended Complaint, Plaintiff removed all references to a discrimination theory under "Title VIII of the Civil Rights Act of 1968 (Fair Lending Laws)." (*Compare* Compl. ¶ 4, *with* Am. Compl. ¶ 4).

[4]  As noted in the Court's January 16, 2024 Letter Order, Plaintiff enumerates five causes of action in his Complaint, but the fifth—violation of the Equal Credit Opportunity Act—appears duplicative of the first, which also alleges violation of the Equal Credit Opportunity Act via discrimination. (D.E. No. 5 at 2 n.1).

15).[5]

On May 10, 2024, Defendant moved to dismiss the Amended Complaint. (D.E. No. 19). On June 2, 2024, Plaintiff opposed (D.E. No. 22 ("Opp. Br.")),[6] and on June 23, 2024, Defendant replied (D.E. No. 25 ("Reply Br.")). Plaintiff also filed a sur-reply without leave of Court. (D.E. No. 26 ("Sur-Reply")). Furthermore, on June 17, 2024, Defendant filed a motion for sanctions under Federal Rule of Civil Procedure 11 based on Plaintiff's allegedly frivolous Amended Complaint. (D.E. No. 23; *see also* D.E. No. 24 (Plaintiff's opposition brief); D.E. No. 28 (Defendant's reply brief)). Thereafter, on June 24, 2024, Plaintiff moved to strike Defendant's motion for sanctions. (D.E. No. 27; *see also* D.E. No. 29 (Defendant's opposition brief)). On October 23, 2024, Magistrate Judge Stacey D. Adams dismissed Defendant's motion for sanctions and Plaintiff's motion to strike as moot pending resolution of the instant motion to dismiss the Amended Complaint. (D.E. No. 30).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth a "short and plain statement of the grounds for the court's jurisdiction," "a short and plain statement of the claim showing that a pleader is entitled to relief," and "a demand for the relief sought, which may include relief in the alternative or different types of relief." The pleading standard announced by Rule 8

---

[5] By way of background, it appears Plaintiff has brought similar discrimination claims in at least four other matters against different defendants throughout the country. *See Shih v. Mitsuwa Corp.*, Civil Action No. 24-3134 (C.D. Cal.); *Shih v. The Broadway League*, Civil Action No. 23-8035 (S.D.N.Y.); *Shih v. Greater Newark Econ. Corp.*, Civil Action No. 23-21069 (D.N.J.); *Shih v. Cmty Dev. Fin. Insts. Fund*, Civil Action No. 23-3904 (D.D.C.).

[6] Plaintiff appended various exhibits to his opposition brief, which are documents referred to and incorporated by reference in the Amended Complaint. (*See* Opp. Br. at 19–29, Exs. A–F; *see also* Am. Compl.). In its reply submission, Defendant did not object to the Court's consideration of these exhibits in connection with its Motion (*see generally* Reply Br.), and accordingly the Court's Opinion herein accounts for Plaintiff's Exhibits A through F. *See, e.g., Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (noting that, pursuant to Rule 12(b)(6), the Court "may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case" (internal quotations omitted)).

does not require detailed factual allegations; it does, however, demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). In addition, the plaintiff's short and plain statement of the claim must "give the defendants fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citation and quotations omitted).

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 570). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid*. (internal citation omitted).

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Moreover, "[when] deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached [thereto], matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (internal citation omitted). Furthermore, in ruling on the present motion, the Court "must

5

construe [Plaintiff's] complaint liberally as he is proceeding pro se." *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32 (3d Cir. 2011) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).[7]

## III. DISCUSSION

### A. Equal Credit Opportunity Act Claim – Counts I[8] & V

Plaintiff's claim under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.*, fails for the same reasons set forth in the Court's January 16, 2024 Letter Order (D.E. No 5 at 4) and for additional reasons explained below. Under the ECOA, it is "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a). To establish a *prima facie* claim under the ECOA, a plaintiff must show that he (i) was a member of a protected class; (ii) applied for credit from defendant; (iii) was qualified for the credit; and (iv) was denied credit. *Chiang v. Veneman*, 385 F.3d 256, 259 (3d Cir. 2004).

First, nowhere in Plaintiff's pleading does he clearly allege that his business[9] qualified for the specific loan sought from Defendant. (*See generally* Am. Compl.). Indeed, notwithstanding

---

[7] Although Defendant moved to dismiss the Amended Complaint, the Court is also permitted to screen the Amended Complaint pursuant to 28 U.S.C. 1915(e)(2)(B) in light of Plaintiff's *in forma pauperis* status, which this Court previously granted. (D.E. No. 5 at 3). Indeed, "[a]fter a court makes a decision that a plaintiff is qualified for [*in forma pauperis*] status pursuant to 28 U.S.C. § 1915, the court must then 'screen' the [c]omplaint." *Williams v. Clifton Police Dept.*, No. 11-5217, 2011 WL 5104505, at *1 (D.N.J. Oct. 25, 2011) (citing 28 U.S.C. § 1915(e)(2)(B)). The Court must *sua sponte* dismiss any claim that (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief from a defendant who is immune from such relief. *See* § 1915(e)(2)(B)(i)–(iii). "When considering whether to dismiss a complaint for failure to state a claim pursuant [to] § 1915(e)(2)(B)(ii), the District Court uses the same standard it employs under Fed. R. Civ. P. 12(b)(6)." *Vaughn v. Markey*, 813 F. App'x 832, 833 (3d Cir. 2020).

[8] Because Plaintiff removed all references to alleged discrimination under Title VIII of the Civil Rights Act of 1968, the Court does not reassess Plaintiff's previously asserted legal theory. However, even if Plaintiff maintained this theory of discrimination, the Court's prior analysis remains true—that is, Plaintiff's theory falls short for failure to allege that "the loan he sought related to housing or real estate." (D.E. No. 5 at 3–4).

[9] Although not explicitly alleged, the Court gleans from the Amended Complaint as well as Plaintiff's exhibits incorporated by reference therein that the loan sought was intended for Plaintiff's business, not for Plaintiff himself. (*See* Opp. Br. at 22, Ex. C (confirming that Defendant requested to see where "revenue came in" and signing correspondence as "the set international LLC")).

Plaintiff's allegations that Defendant had doubts regarding the loan amount Plaintiff applied for (*see id.* ¶¶ 8 & 16),[10] Plaintiff never alleges the monetary amount he requested in his loan application. (*See generally id.*). And while Plaintiff now alleges that he "has [a] great credit score," and was qualified for the loan he sought "due to his success in 2023 securing business loans for the NJEDA, Big Banks and Private sector business loan companies" (*id.* ¶ 12(d)), he does not allege whether the purported loans he secured were of the same or similar amounts or had the same or similar securities as the loan he sought from Defendant. (*See generally id.*). These deficiencies remain fatal to Plaintiff's ECOA claim. *See Carter v. Bentley Motors, Inc.*, 489 F. Supp. 3d 316, 324 (D.N.J. 2020) (dismissing complaint in part because the plaintiff had not "pleaded any facts that show that she was qualified" for the credit she sought); *see also Louis-Jean v. Ally Fin.*, No. 22-4435, 2023 WL 2992647, at *2 (D.N.J. Apr. 18, 2023) ("Plaintiff failed to state a claim under the ECOA where he failed to plead facts alleging that he qualified for a consumer credit transaction."); *Hartman v. Bank of N.Y. Mellon*, No. 13-1909, 2013 WL 12177848, at *1 (E.D. Pa. Nov. 25, 2013) ("[Plaintiff] has not pled that she was qualified for the refinancing credit she sought, or that BNYM denied credit to her despite her qualifications."), *aff'd*, 650 F. App'x 89 (3d Cir. 2016).

Second, although Plaintiff alleges Defendant requested additional information from Plaintiff to complete the loan application such as a "Profit and Loss" statement, "balance sheet," and various tax returns, Plaintiff never alleges that he provided these materials to Defendant. (*See* Am. Compl. ¶¶ 8–9).[11] Indeed, similar to *Parker v. Route 22 Honda*, No. 22-7117, 2023 WL

---

[10] It appears Plaintiff sought $100,000 in the loan application at issue. (*See* Opp. Br. at 19, Ex. A).

[11] In a sur-reply filed without leave of Court, Plaintiff conclusorily states that he supplied "all required documentation" with his loan application. (Sur-Reply at 3 (citing Am. Compl. ¶ 10)). This statement, along with paragraph ten (10) of the Amended Complaint, does not suggest that Plaintiff submitted the documentation Defendant requested **after** the submission of his loan application. The same is true of the exhibits Plaintiff appended to his opposition brief.

157587, at *2 (D.N.J. Jan. 11, 2023),[12] it appears Plaintiff never provided certain financial information Defendant required to decide the loan application. (*See generally* Am. Compl. & Opp. Br.). Moreover, Plaintiff does not appear to dispute that he "withheld material information from Defendant that would be necessary for it to perform an initial evaluation of Plaintiff's credit worthiness." *See Parker*, 2023 WL 157587, at *2; *see generally* Opp. Br.). Accordingly, Plaintiff's failure to allege that he supplied Defendant with the requested financial materials in connection with the loan application at issue provides a separate basis to dismiss his ECOA claim. *See Parker*, 2023 WL 157587, at *2 (dismissing ECOA claim as non-cognizable where plaintiff "refused to provide certain personal information to Defendant which, as a practical matter, would be required . . . in order for it to make an informed decision on whether to even extend an offer of credit to her").

Plaintiff purports to ground his refusal—and this lawsuit—on his belief that Defendant's request "for a detailed listing of revenue sources . . . w[as] pretextual and constituted discrimination." (Am. Compl. ¶ 10). Although Plaintiff argues that he was being discriminated against when Defendant's loan officer requested "good books and records for lending purposes" (Opp. Br. at 25, Ex. D), there is nothing discriminatory on the face of this request as Defendant's desire to review books, records, profit and loss statements, etc., is untethered to Plaintiff's ethnicity or religious beliefs. (*See id.* at 6). Furthermore, Plaintiff does not allege any other facts in support of Defendant's alleged discriminatory motive; nor is there any plausible inference of any discriminatory motive from Plaintiff's allegations or Defendant's communications with Plaintiff. (*See generally* Am. Compl.; *see also* Opp. Br. at 19–27, Exs. A–D). As such, the Court declines to interpret Defendant's request for documentation "any which way" as Plaintiff desires and

---

[12] The plaintiff in *Parker* alleged that she refused to provide certain personal information to the defendant car dealership which it required to process her credit application. 2023 WL 157587, at *2.

8

disagrees with Plaintiff's conclusory contention that Defendant "show[ed] open hostility toward the Plaintiff due to [his] religious beliefs." (*See* Opp. Br. at 7–8).

For these reasons, Plaintiff fails to state a claim under the ECOA. Because Plaintiff failed to address the deficiencies as to Counts I and V as stated in the Court's January 16, 2024 Letter Order (D.E. No. 5), these claims are dismissed *with prejudice*. *See, e.g.*, *Brown v. Cantineri*, No. 14-6391, 2017 WL 481467, at *2 (D.N.J. Feb. 6, 2017) ("Because I have already given [the plaintiff] one opportunity to amend, this dismissal is with prejudice."); *accord Foster v. Raleigh*, 445 F. App'x 458, 460 (3d Cir. 2011); *LeJon-Twin El v. Marino*, No. 16-2292, 2017 WL 1591856, at *4 (D.N.J. Apr. 28, 2017); *Venditto v. Vivint, Inc.*, No. 14-4357, 2015 WL 926203, at *15 (D.N.J. Mar. 2, 2015).

### B. First Amendment Claim – Count IV

Regarding Plaintiff's First Amendment claim, Plaintiff alleges that Defendant violated his First Amendment rights by "subjecting [him] to discriminatory practices based on [his] religious belief." (Am. Compl. ¶ 25; *see also id.* ¶¶ 26–32). As noted above, Plaintiff's Amended Complaint also includes various allegations in support of his contention that Defendant is a state actor. (*See, e.g.*, *id.* ¶ 26 (claiming Defendant is a state actor based on its "substantial state funding[], public function performance, and delegated power"); *see also id.* at 4 ¶¶ I.1, II, and III)).

Although not specified in the Amended Complaint, the Court construes Count IV as raising a claim under 42 U.S.C. § 1983. A claim under § 1983 has two essential elements: (i) the conduct complained of must be "committed by a person acting under color of state law"; and (ii) this conduct must "deprive[ ] a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir. 1993).

Whether a defendant acts under the color of state law depends on whether there is "such a

close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). The Third Circuit has outlined three broad tests following Supreme Court jurisprudence to determine whether state action exists:

> (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state [also known as the public function test]; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.

*Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted). "Action taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999). Instead, to support a finding of state action, "the government must be 'responsible for the specific conduct of which the plaintiff complains.'" *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). Moreover, the Third Circuit has noted that the public function test "is rarely satisfied for while many functions have been traditionally performed by governments, very few have been exclusively reserved to the State." *Robert S. v. Stetson Sch., Inc.*, 256 F.3d 159, 165–66 (3d Cir. 2001) (internal quotations and alterations omitted); *see also Brown v. Philip Morris Inc.*, 250 F.3d 789, 801–02 (3d Cir. 2001) ("The gravamen of the public function test is whether the government is effectively using the private entity in question to avoid a constitutional obligation or to engage in activities reserved to the government." (internal quotations omitted)).

As with the Original Complaint, putting aside the lack of factual support for discriminatory

10

behavior, Plaintiff fails to explain how Defendant, a private company,[13] constitutes a state actor, a condition precedent to a violation of the First Amendment. *See Bartnicki v. Scranton Sch. Dist.*, No. 21-2360, 2022 WL 4243953, at *1 (3d Cir. Sept. 15, 2022) ("First Amendment claims require 'state action.'"). As noted in *Hicks v. Garrity*, "courts in the Third Circuit have explicitly rejected the notion that private banks are state actors." No. 21-1067, 2022 WL 4001074, at *5 (W.D. Pa. Aug. 11, 2022) (quoting *Esser v. Evans*, No. 11-0376, 2011 WL 1539797, at *2 (M.D. Pa. Apr. 21, 2011)). While Plaintiff continues to allege that Defendant receives state funding, as this Court previously noted, receipt of state funding alone is not sufficient to transform a private actor into a state actor. (D.E. No. 5 at 4 (citing *Swartz v. Bd. of Trs. at Univ. of Penn.*, No. 22-1568, 2022 WL 17718343, at *2 (3d Cir. Dec. 15, 2022))). Similarly, the Amended Complaint is bereft of allegations suggesting that Defendant carried out state regulations or policies in denying Plaintiff's loan application; nor is it sufficient to allege that Defendant operates in a regulated industry. *See Awala v. Wachovia Mortg. Corp.*, 156 F. App'x 527 (3d Cir. 2005) (finding that banks are not state actors even though they are a regulated industry and trade in government bonds); *Moore v. Branch Banking & Tr. Co.*, No. 09-0116, 2010 WL 4962909, at *3 (W.D. Ky. Dec. 1, 2010) ("[M]ere regulation is not enough to turn a private individual into a state actor."). Accordingly, Plaintiff's legal conclusions regarding Defendant's purported state action are insufficient to raise a Section 1983 claim. *See, e.g.*, *Rodriguez v. Widener Univ.*, No. 13-1336, 2013 WL 3009736, at *4 (E.D. Pa. June 17, 2013) ("The Complaint's assertion of state action is not plausible because it alleges only the bare legal conclusions that all [d]efendants were acting under the color of state law." (internal quotations omitted)).

Furthermore, even assuming Plaintiff alleged sufficient information to establish Defendant

---

[13] Plaintiff does not contest that Defendant is a private company. Rather, he claims Defendant's actions can arise under state law "if they involve enforcement of state regulations or polices." (Opp. Br. at 7).

acted as an arm of the state, the Amended Complaint fails to establish that Defendant deprived Plaintiff of any First Amendment right in denying his loan application. Indeed, other than mere conclusory statements that Defendant discriminated against Plaintiff on the basis of his religion and/or race, the Amended Complaint is devoid of any plausible allegations suggesting that Defendant denied Plaintiff's loan application on the basis of his Christian beliefs and/or race as an Asian American. (*See generally* Am. Compl.). For these reasons, Plaintiff fails to allege a Section 1983 claim for alleged violation of his First Amendment rights. *See, e.g.*, *Aponte v. United States Dep't of Hous. & Urb. Dev.*, No. 20-0238, 2020 WL 1700571, at *3 (E.D. Pa. Apr. 8, 2020) ("Here, Aponte does not allege sufficient facts from which the Court can infer that these remaining Defendants are state actors or that they violated Aponte's due process or First Amendment rights."). Furthermore, because Plaintiff did not correct the deficiencies with respect to this claim as stated in the Court's January 16, 2024 Letter Order (D.E. No. 5), Count IV of the Amended Complaint is dismissed *with prejudice*. *See, e.g.*, *Brown*, 2017 WL 481467, at *2; *accord Foster*, 445 F. App'x at 460; *LeJon-Twin El*, 2017 WL 1591856, at *4; *Venditto*, 2015 WL 926203, at *15.

### C. State Law Claims (Counts II & III)

Having dismissed all federal claims alleged in the Amended Complaint, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims arising under state law (intentional infliction of emotional distress (Count II) and negligence (Count III)).[14] *See* 28 U.S.C. § 1367(c)(3); *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) ("This Court has recognized

---

[14] The Court also lacks original jurisdiction over these remaining state-law claims because "[f]or diversity jurisdiction to lie, there must be 'complete diversity' amongst the parties;" and complete diversity "means that the plaintiff cannot be a citizen of the same state as any of the defendants." *See Fink v. Kirchner*, 731 F. App'x 157, 159 n.4 (3d Cir. 2018). Here, Plaintiff continues to maintain that both he and the UCEDC are citizens of New Jersey. (*See* Am. Compl. ¶¶ 2–3; Sur-Reply at 9). Thus, the Court lacks diversity jurisdiction over these claims.

that, 'where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) (emphasis in original))). Accordingly, Counts II and III of the Amended Complaint are dismissed *without prejudice*.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss. Counts I, IV, and V of Amended Complaint are dismissed *with prejudice*, and Counts II and III of the Amended Complaint are dismissed *without prejudice*. Pursuant to 28 U.S.C. § 1367(d), Plaintiff may bring any state law claims in a state court within thirty (30) days of the entry of the Order that accompanies this Opinion.

Dated: December 19, 2024                                s/ *Esther Salas*
                                                        **Esther Salas, U.S.D.J.**